3-21-0462, the people of the state of Illinois, Appalee v. Dean A. Resser, Appellant. I think we're ready now. Mr. Johnson? May it please the Court, my name is Randy Johnson. I represent the Appellant, Dean Resser. Your Honors, this appeal comes before the Court as a speedy trial claim under the 160-day provision of 725 ILCS 5 forward slash 103-5 sub B. The people initially have submitted a confession of error concerning the efficacy of my client's speedy trial demand. Accordingly, I respectfully ask the Court to accept that confession of error. Moving forward, Your Honors, the real question here surrounds what occurred before Judge Jeffrey O'Connor at the hearing on October 2nd, 2018. The transcript for that is in the record beginning at Common Law record page 234. The question surrounds the issue as to whether or not the motion in limine that had been filed by Mr. Resser was effectively ruled upon by Judge O'Connor on October 2nd, 2018. Now, looking at this context, please understand that there was a trial date set 20 days later on October 22nd, 2018 in this matter that Judge O'Connor specifically repeatedly set during that hearing. I point out the words of the Court at C, Common Law record 256, it's going, it's set, it's going. So, Judge O'Connor was well aware that this case was set for trial, it was going to trial, and viewed whatever happened on this, as far as his rulings on this motion in limine on October 2nd as items that certainly were not complex, they were not confusing. He certainly showed no confusion whatsoever, and he stated repeatedly, this is my ruling, this is my ruling. I'll put it on the record right before the trial, but these are my rulings, you know what my rulings are. It was perhaps an informal way to do it, but it was a pleasant professional discussion amongst two attorneys and the court. The state's attorney, in fact, in this case, remarked to the judge, to Judge O'Connor, that this is the hearing on the motion in limine, the defense motion in limine. The ruling later on the motion to dismiss, Your Honor, we respectfully maintain that Judge Chikris's review of this was error. And the legal error that it was based upon, was he took the position that his view of this was error, and that's what Judge O'Connor did. He was to be guided by the notations on the file, as opposed to the actual words of Judge O'Connor. I think he quite clearly, he said that he was to be guided by the notes apparently made by the clerk, as opposed to the actual words used by the trial court. We think that that was error, Your Honor, Your Honors. The court should not have done that. The court should have recognized that the words of Judge O'Connor constituted the ruling, not what a clerk wrote about Judge O'Connor's words later. And this bounces back and forth on the standard of review. We've noted that there's an Illinois Supreme Court case that says, well, is it an abuse of discretion? And there's a later Illinois Supreme Court case that says, well, it's de novo review. Counsel for the people has pointed out that it's also, it could be regarded as de novo review. But we believe, Your Honor, whether the court views this as an abuse of discretion because the second trial judge reviewing Judge O'Connor's words viewed this as something that was to be guided by the notes on the file. That certainly was an error of law and could be regarded as a, certainly under a de novo standard. It's a reversible error. But also, when you look at the actual words of Judge O'Connor on October 2nd, he viewed this with zero complexity. Zero complexity. How is this trial set merely 20 days after? This was not some idea that Judge O'Connor was going to be just overwhelmed by this ruling at all. The Ladd case tells us that one of the things that has to be looked at is that when the, particularly, you look at this legal complexity of this. And I think the best way to look at the legal complexity or lack thereof is through the very words of Judge O'Connor when he was ruling on this. The only matter that intervened respectfully after October 2nd and October 22nd was the motion filed by the state, motion in limine, that was ultimately ruled on many hundreds of days later. But we know from Judge O'Connor's words, he was ready to place his rulings that he made on October 2nd on the record right prior to the trial 20 days later. These statutory provisions must be given liberal construction in favor of the defense. The Supreme Court has said that in people versus Ladd. And I think that to view this as anything other than a matter that's really attributable, not to Dean Resser, but to the people, is error. Except for Attorney Vandersnick's minor illness that took place in November, the only matter pending was the people's motion in limine that amazingly was filed six days prior to the trial date of October 22nd in this case. That is the only thing that was was pending. So, Your Honors, as far as a violation of the 160 day rule, the 432 day interval between March 5, 2019 and May 10, 2020 is not attributable to Dean Resser. So, Your Honors, with those things in mind, and the view of the word, the very words of Judge O'Connor, I'm going to ask the court to reverse the denial of the motion to dismiss. In fact, there was a violation of my client's right to speedy trial under the 160 day rule. And to reverse this decision, that's all I have at this point. Thank you very much, Your Honors. If you have any questions, I'll be happy to answer them. Thank you, Mr. Johnson. Justice Peterson. You're muted right now, but we can see what you were saying. Yeah, I do not have any questions. Justice Albrecht. I have no questions. Nothing at this time for me either, Mr. Johnson. Mr. Gunitevic. Thank you, Your Honors. May it please the court. My name is Gary Gunitevic. I am with the Appellate Prosecutor's Office representing the people of the state of Illinois in this appeal. The people do not question the fact that the defendant has a right to a speedy trial. So what I'm about to say is not an effort to denigrate that right. But concomitantly with the defendant's right to have a speedy trial, the state is also given the opportunity of having 160 days within which to bring in the trial. And so we get down to a calculation here because the time here that's in question is the 400 and actually it's the 432 days from March 15th of 19 to May 10th of 2020. Now, in doing the calculation, I'm going to kind of work backwards a little bit here because the defendant has kind of argued here that the entire 432 days is countable against the state. Well, we have to subtract out of this here a portion of that time, although it still does not reduce it to under 160, but that's with respect to the aspect of COVID and the Supreme Court's order and the circuit judge's order. Basically, there's 51 days there that comes off of the clock. So we still have 360 days here that we're still dealing with. In this case, quite frankly, I had a very difficult time in ferencing out exactly what all was happening here. What we have is we have apparently two separate cases. We have 17 DT 73 to 74 and 17 DT 59 to 60. We also have 17 DT or 17 TR 1952 and 1953. On July 9th of 18, defendant filed a first motion in limine that at least according to the motion that was filed, it was filed in 17 DT 73 74 and 59 60. What I found interesting was in looking through the record that we have here on appeal, what is absent from filing in this appeal anyway, and the record we have is the July 16th, 2018 second motion by defendant, second motion in limine that was filed in 17 DT 59 60 and 17 TR 1952 53. Now, this motion from July 16th does appear in our record, but only as an exhibit. It doesn't appear as a separate filing. So, again, when you take a look at what was being discussed and what was being argued on October 2nd, there was talk about the preliminary breath test. There was talk about whether or not there was refusal. There was talk about warnings to motorists, et cetera. And the conversation eventually got on to Officer Jarosz. And what eventually happened was in talking about that aspect, which seems to go to the July 16th, but again, there was really nothing really ever discussed or argued. There was just general discussion. And eventually what happened was in trying to determine whether or not he had proper training to do the horizontal gaze nystagmus test following and had the proper training. What eventually happened was the trial judge said at R 52 and 53 of the record, motions in limine are rules of law under rules of evidence. It applies or it doesn't. It's not a discovery process. So, anyway, I'll make a ruling on that before we bring in the jury. Motion in limine was disguised as a deposition and Judge O'Connor basically rejected that particular notion. So, in this case, when Judge Chikris read the record, and by the way, Judge Chikris' reading of the record, we have actually have two trial judges who reviewed the record, Judge Chikris and Judge Cosby. And Judge Cosby came and I quote, now when you read that transcript as a whole, I would submit to you that I also developed the impression that you guys were talking about the other case at that point in time. Because the conversations were about Officer Jarosz, who was the arresting officer in the other case, since the court is familiar with who these officers actually are in the quote. So, Judge Cosby got the same reading on the record as Judge Chikris. Then basically, the motion in limine, and it appears as though it's going to be the second motion in limine, the one filed July 16th, was really never addressed, was never addressed and was never decided and remained pending. Now, in the process of doing all of this, the judge did want to take and set it, and basically was going to take and make his ruling before the jury was brought in. In the process, the state then files their motion in limine with respect to this expert. And now Judge Chikris, or excuse me, Judge O'Connor wanted to take and bring all of this together at one time. The problem is, it never happened. Now, according to Judge Chikris' ruling, there are basically three reasons that were given as to why speeding trial was not violated. One was the fact that the motion in limine remained pending and that there was really no decision. Judge O'Connor took a leave of absence, and then we have COVID. Now, Judge O'Connor was ill during this time period. Whether or not it was March of 19 or March of 2020, the fact of the matter remained, we still have the motion in limine that was undecided. In the process of doing all that, we have Judge O'Connor becoming ill, taking an indefinite leave of absence. Judge Chikris is then assigned March 2nd of 2020, and he steps in and is faced with making his decision on a motion to dismiss. So, under the facts of this case, and as you read the record as a whole, I do believe that Judge Chikris' reading of the record is accurate. It makes no difference whether or not the issues that were motions to eliminate, whether they were easy, whether they were difficult, whether they were complicated, whether they were not, it matters not. It's the fact that Judge O'Connor really never finalized or made a ruling on these, and the state was in the position, with respect to the expert, it only makes sense that they're not going to take and have this hearing right before trial because they would not then have an expert available. They needed a ruling on their motion, which granted is our motion, but that aspect is concomitant with the motion in limine that was filed by the defendant that was really never addressed and for sure was never really decided. And if we take the defendant's argument, as he puts in his brief, we have to take and listen to what Judge O'Connor said. We have to take note by what his words are. Well, his words are, I'll make a ruling on that before we bring in the jury. There was no definitive ruling. The motion remained pending, and as a result, speedy trial was still told. So for these reasons, the people would respectfully request that this court affirm the decision that was made by Judge Chikos. If there are any questions, I'll be more than happy to attempt to respond if I can. Justice Peterson, excuse me. And your mic is off, Justice Peterson, again. I apologize. I've been coughing a bit, so I keep putting on the mood to not interrupt your arguments with my cough, so I apologize. I do not have any questions. Justice Albrecht? No questions. I have a few. Ms. Skinner-Devick, I have a few questions. You alluded to the two separate DUI incidents. It appears from the record that there was a DUI arrest in the 50 DTs, 59 and 60, and then subsequent to that, assuming everything went up, and was filed consistently with the numbers here, a subsequent DUI, which is the DUI we're talking about. I was tempted to ask Mr. Johnson what happened to the first DUI, mostly out of curiosity only, but I thought it wasn't relevant. But you've left an argument out there suggesting that there were separate motions filed in separate cases being handled at the same time, and somehow that was never ruled upon. And then you go on to talk about the fact that the rulings that we have looked at in the transcript of October 2nd are just not sufficient because there was not a ruling. Which way are you arguing here, and what is the substance of the fact that there was another DUI out there and that the judge seemed to be handling them at the same time? The aspects here with respect to the two separate cases that were kind of being treated all together, there was overlap on everything, is part of the problem. And then one motion is basically assigned to certain cases, and the other motion is assigned to this other case. And I think what happens is there's a certain amount of confusion that's existing. Eventually what happened was the 17 DET 5960 and 17 TR 1952 and 53, those cases were dismissed by the state, and the trial judge accepted that on April 19th of 2021. So the only case that really ever did go to trial was the 17 DET 7374. And so when you look at that transcript of October 2nd of 18, what happens is there's a conglomeration of talking about everything. And Judge Tricker says that basically it ended up being not a hearing, it ended up being more of an informal discussion about what was going on. But what eventually happened was it seemed as though it started out to go just for the first motion of limine, but what eventually happened is it transgressed into a discussion about the second motion, but the second motion was never really argued. And all they really ever talked about was whether or not this officer had this particular training. Do you think that has relevance to this particular issue, though? I agree with you that it is confusing and it can be maybe parsed out to make it more clear, but do you think it has relevance to your position here? Yes, I do, because basically what happens is that's the reason why I think what Judge Tricker and Judge Cosby were both saying was that basically their discussion started talking about another case. And the thing is, the motion was never argued. And because the motion was never argued, I think it's the motion to take. And with respect to Officer Jarosz and whether or not he could actually testify with respect to his opinion about the field sobrieties and conclusions, I think that's the one that really wasn't really decided. But again, for me anyway, it was very difficult to try to parse this out and try to figure out exactly. And the difficulty is, as I'm sure Your Honor is aware, with records on appeal, what happens in the trial court, everybody knows what's going on. Everybody knows, but they don't articulate it clearly enough to the point where when we read it on appeal, we can take and definitely say, we have this, we have this, we have this. And I think this is one of those situations where everybody knew what was going on and discussion just flows and nobody is really concerned about what the record shows. It's not a complaint. It's just that was my difficulty with this record. All right. Thank you, Mr. Knudovic. Any other questions based on my questions? No. All right. Mr. Johnson, any rebuttal? Yeah, just very, very, very short. I think, Your Honor, that the fact that Judge O'Connor did not view Dean Resser's motion in limiting or either one of them, apparently, somewhere here, as difficult or complex is of critical legal significance in this case. The law indicates that the common attribution of delay because of a defense motion does not mean automatic attribution of delay. Speedy trial statute contemplates more than just mechanical attribution of delay every time a defendant engages in an act in pursuit of a defense. A per se rule does not exist. Speedy trial rights do not toll simply because a defendant files a motion. If such a rule did exist, our inquiry could end here. Not all motions cause delay. Whether a motion, in fact, causes delay depends on the facts and circumstances of each case, and the trial court must appraise the timeliness and complexity of the motion. And for those propositions, we cited the case of People v. Ladd, 5th District Case 294, Illap III at 928, page 931, 932. The point here is Judge O'Connor never viewed Dean Resser's motion in limiting as anything as complex. How do we know it? Because this trial was set 20 days after October 2, on October 22, and the only thing that intervened between that and him saying, I'll put my rulings right on the record. And by the way, these are my rulings. The only thing that intervened was the state's motion in limiting it. Your Honors, we've answered the issues concerning the COVID and the COVID order of the Supreme Court and also the order from the Chief Judge of the Circuit in our reply, and I won't belabor those issues. And Your Honors, respectfully, I believe that this is a case that this court should reverse and should require and determine that my client's right to speedy trial was violated here. That's all I have, respectfully. Thank you, Your Honors. Thank you, Mr. Johnson. Colleagues, any questions? I do not. None. All right. Gentlemen, thank you very much. We'll take this under advisement and issue our opinion soon. Thank you.